IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

SOLO CUP OPERATING
CORPORATION,

    Plaintiff,

v.

INTERNATIONAL BROTHERHOOD
OF TEAMSTERS, LOCAL 528,

    Defendant.

CV 115-185

**O R D E R**

"Everyone supposedly loves arbitration. At least until arbitration goes badly." Saturn Telecomms. Servs., Inc. v. Covad Commc'ns Co., 560 F. Supp. 2d 1278, 1279 (S.D. Fla. 2008). In this case, the parties arbitrated whether Plaintiff Solo Cup Operating Corporation ("Solo") violated the parties' collective-bargaining agreement. The arbitration went badly for Solo, and it now seeks to modify the arbitrator's award. Because the arbitrator's decision represents an arguable interpretation of the parties' collective-bargaining agreement, the Court will not disturb his award.

## I. Factual Background

This matter arises out of Tamela Wells's employment with Solo, the termination of her employment, and the arbitration that ensued following the end of her employment.

**1. The Parties' Collective-Bargaining Agreement**

While employed at Solo, Ms. Wells was a member of a bargaining unit represented by Defendant International Brotherhood of Teamsters, Local 528 ("the Union"). Solo and the Union were parties to a collective-bargaining agreement. Under Article 5 of that agreement, Solo was "vested exclusively with the management of the business, including, but not limited to, the following rights: . . . to change or eliminate existing methods of operations, equipment or facilities . . . ." (Doc. 24-3 at 10.) Article 10 of the agreement established procedures for filing and resolving grievances. (Id. at 17.) And, under Article 11, grievances that the parties were unable to resolve amicably would proceed to arbitration. (Id. at 18.) Although arbitration under Article 11 was final and binding on the parties, the arbitrator had "no power to add to, subtract from or modify the terms" of the collective-bargaining agreement. (Id. at 18.) Article 27 of the collective-bargaining agreement specifically prohibited "discrimination by either [Solo] or the Union against any employee because of race, creed, color, age, sex, disability, or national origin, in the administration and

2

application" of the collective-bargaining agreement. (Doc. 24-3 at 37.) The parties agree that, with respect to arbitrating claims for disability discrimination, Article 27 incorporated the Americans with Disabilities Act ("ADA"). The ADA makes it unlawful to fail to accommodate an otherwise qualified individual with a disability. See 42 U.S.C. § 12112.

**2. Ms. Wells's Employment**

Ms. Wells worked for Solo from 1982 until 2014. She began working as a forklift operator in 1990, and she held that position until her employment was terminated in 2014. For the overwhelming majority of her time as a forklift driver, Ms. Wells operated a sit-down forklift. But in 2013, after Dart Container Corporation acquired Solo, Solo transitioned to using stand-up forklifts. Ms. Wells began operating a stand-up forklift in March 2014. Soon thereafter, she began experiencing health issues: she suffered from swollen ankles, back pain, and tingling and numbing in her feet.

Ms. Wells sought medical treatment for these issues. Her chiropractor diagnosed her with a "degenerative arthritic condition." (Doc. 24-4 at 5.) She eventually visited an orthopedist who recommended that she be permitted to return to using a sit-down forklift. Ms. Wells provided Solo with a written statement from this doctor requesting that she either be allowed to use a sit-down forklift or take a fifteen-minute

3

break for every hour she spent on the stand-up forklift. Solo agreed to accommodate her by allowing her to spend fifteen minutes performing other duties after every hour she spent on the stand-up forklift.

Subsequently, Ms. Wells's primary-care physician also recommended that she be permitted to return to using a sit-down forklift. Alternatively, he recommended that Ms. Wells be allowed to take a thirty-minute break for every hour she spent on the forklift. Solo denied both requests and instructed Ms. Wells to seek additional options from her doctor. When Ms. Wells reported that no other possible accommodations existed, Solo terminated her employment. In response, the Union filed a formal grievance on Ms. Wells's behalf, which Solo denied. The parties thus proceeded to arbitration.

### 3. The Arbitration

The parties jointly selected William A. Dealy Jr. to preside over the arbitration. The parties also stipulated that, aside from the restrictions placed on the arbitrator by the collective-bargaining agreement, "they were not restricting the Arbitrator in any way." (Id. at 4.) And they agreed that the arbitrator would determine the issues to be decided. See International Brotherhood of Electrical Workers v. Verizon Fl., LLC, 803 F.3d 1241, 1247 (11th Cir. 2015) ("[W]here — as here — the parties refuse to stipulate to the issues at arbitration,

4

the arbitrator is 'empowered' to frame and decide all the issues in the grievance as he sees them.").

At the arbitration and in its post-hearing briefs, Solo argued that the decision to implement the stand-up forklifts was within its powers under Article 5 of the collective-bargaining agreement, that providing Ms. Wells a sit-down forklift was not a reasonable accommodation under the ADA, and that, even if providing her a sit-down forklift were a reasonable accommodation, it amounted to an undue hardship and posed a direct threat under the ADA. The Union argued, among other things, that allowing Ms. Wells to return to using a sit-down forklift was a reasonable accommodation under the ADA.

After hearing the evidence and reviewing the briefs, the arbitrator determined that he was tasked with deciding:

> Did the Company violate provisions of the parties' collective bargaining agreement and/or any provisions of Federal law when it separated the Grievant, Ms. Tamela R. Wells, from employment on October 10, 2014. If so, what is the remedy?

(Doc. 24-4 at 24.) The arbitrator determined that Solo violated the collective-bargaining agreement (and the ADA) by not providing Ms. Wells with a reasonable accommodation. He awarded Ms. Wells back pay, ordered her reinstated, and ordered Solo to provide her with a sit-down forklift.

## II. Procedural Background

Following the arbitrator's ruling, Solo initiated this action in November 2015 by filing a complaint to vacate or modify the arbitrator's award. (Doc. 1.) The Union answered and filed a counterclaim seeking to enforce the award. (Doc. 15.) Both parties now move for summary judgment. Solo asks the Court to modify the portion of the award ordering it to provide Ms. Wells with a sit-down forklift. The Union asks the Court to enforce the award in its entirety, to remand the case to the arbitrator to calculate back pay, and to award attorneys' fees and costs.

## III. Summary-Judgment Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must view the facts in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [its] favor." United States v. Four Parcels of Real Prop.,

6

941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal punctuation and citations omitted).

In this action, the Clerk of the Court gave the parties notice of the motions for summary judgment and informed them of the summary-judgment rules, the right to file affidavits or other materials in opposition, and the consequences of default. (Docs. 25, 26.) Therefore, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied. The time for filing materials in opposition has expired, and the motions are now ripe for consideration.

## IV. Discussion

Solo requests that the Court modify the portion of the arbitrator's award requiring it to provide Ms. Wells with a sit-down forklift. The Union seeks to have the Court enforce the award as it is. The Union also asks the Court to award attorneys' fees, costs, and prejudgment interest, remand the matter to arbitrator to calculate back pay, and retain jurisdiction over the matter for enforcement purposes. The Court addresses the parties' arguments below.

**1. Standard for Modifying an Arbitral Award**

Litigants wishing to modify an arbitral award face a high hurdle because "[a] federal court's review of an arbitration award is extremely narrow." IMC-Agrico Co. v. International

7

Chemical Workers Council, 171 F.3d 1322, 1325 (11th Cir. 1999) (internal quotation marks omitted). Indeed, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." United Paperworkers International Union v. Misco, Inc., 484 U.S. 29, 38 (1987); see also United Steelworkers v. American Mfg. Co., 363 U.S. 564, 568 (1960) ("[C]ourts [] have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim." (footnote omitted)).

A court may vacate an arbitral award only when the award is irrational, is outside the arbitrator's authority, or fails to "draw its essence" from the collective-bargaining agreement. See IMC-Agrico Co., 171 F.3d at 1325 ("A court may not vacate an arbitral award unless it is irrational, exceeds the scope of the arbitrator's authority, or fails to draw its essence from the collective bargaining agreement." (citation omitted) (internal quotation marks omitted)); see also Misco, 484 U.S. at 36 ("As long as the arbitrator's award draws its essence from the collective bargaining agreement, and is not merely his own brand of industrial justice, the award is legitimate." (citation

omitted) (internal quotation marks omitted)).

## 2. Analysis

Solo claims that the award should be modified for essentially two reasons. First, it argues that the arbitrator usurped Solo's power to implement new equipment when it ordered Solo to provide Ms. Wells with a sit-down forklift. That is, Solo claims, the arbitrator's award was not authorized under the collective-bargaining agreement. Second, Solo maintains that the arbitrator's award was not authorized under the ADA.[1]

### a. Whether the arbitrator's award was authorized under the collective-bargaining agreement

Solo argues that the collective-bargaining agreement did not authorize the arbitrator to order Solo to provide Ms. Wells with a sit-down forklift. The Union, on the other hand, maintains that the arbitrator's award represents a permissible interpretation of the collective-bargaining agreement. The Court agrees with the Union.

---

[1] In its response in opposition to the Union's motion for summary judgment and in its reply in support of its motion for summary judgment, Solo also argues that it never consented to the arbitrator determining a specific accommodation. But the parties stipulated that the arbitrator would frame the issues to be decided, and he framed them as: "Did the Company violate provisions of the parties' collective bargaining agreement and/or any provisions of Federal law when it separated the Grievant, Ms. Tamela R. Wells, from employment on October 10, 2014. If so, what is the remedy?" (Doc. 24-4 at 24.) In fact, in its first post-hearing brief, Solo proposed two issues, one being: "Was Grievant discriminated against because of her alleged disability in violation of Article 27 of the Collective Bargaining Agreement ("CBA"), and, if so, what shall be the remedy?" (Doc. 23-2 at 3.) Solo did not specify that it sought to limit possible remedies, and the arbitrator clearly determined that awarding a specific accommodation was an appropriate remedy. Accordingly, the Court rejects Solo's argument that it did not consent to the arbitrator ordering a specific accommodation.

9

As noted, as long as an arbitrator is "arguably construing" a collective-bargaining agreement, his decision should not be disturbed. Misco, 484 U.S. at 38. Indeed, courts "must defer entirely to the arbitrator's interpretation of the underlying contract no matter how wrong [they] think that interpretation is." Wiregrass Metal Trades Council v. Shaw Envtl. & Infrastructure, Inc., 837 F.3d 1083, 1087 (11th Cir. 2016). But "an arbitrator may not ignore the plain language of the contract." Id. at 1088 (citation omitted) (internal quotation marks omitted). In essence, an arbitrator is permitted to interpret a collective-bargaining agreement, but he may not modify the agreement. See id. ("The arbitrator acts within her authority when she even arguably interprets a contract, and she exceeds her authority when she modifies the contract's clear and unambiguous terms."). That said, a collective-bargaining agreement need not contain ambiguous terms for it to be open to interpretation. See id. ("A contract may be susceptible to interpretation when it is not facially ambiguous."). In interpreting a collective-bargaining agreement, an arbitrator is permitted to "discover" and apply implied terms in the agreement. Id.

An arbitrator, moreover, is not required to explain his reasoning. Id. at 1091-92. Thus, in some cases, when an arbitrator fails to specifically state his reasoning for an

10

award, the award may be reasonably viewed as an interpretation or as a modification. See id. In those instances, "the court must resolve the ambiguity by finding that the award is an interpretation of the contract and enforcing it." Id. at 1092.

Here, Solo argues that the collective-bargaining agreement unequivocally vested it with the right to change the equipment it used in the facility. Solo claims, therefore, that the arbitrator modified the agreement when he ordered Solo to provide Ms. Wells with a sit-down forklift.

In his lengthy decision, the arbitrator recited in detail the background facts of the case and the parties' positions, summarized the pertinent provisions of the collective-bargaining agreement (including Article 5), articulated his interpretation of the ADA, and issued his award. He did not, however, explicitly rely on any particular principle of contract interpretation or specifically state why the collective-bargaining agreement permitted him to issue the award he chose. Rather, he acknowledged that Article 5 "provides that management had the right, for whatever reason, to move from the use of leased sit-down forklifts to the use of self-owned stand-up forklifts," (doc. 24-4 at 29), but nevertheless ruled that Solo was required to accommodate Ms. Wells with a sit-down forklift.

Solo believes that the arbitrator's decision flies in the face of reason because his "[r]ecognition of Solo's

11

incontrovertible right to eliminate sit-down style forklifts altogether simply cannot be reconciled with an order mandating that Solo continue to provide, and therefore retain — for some indefinite period of time — a sit-down style forklift for Ms. Wells." (Doc. 24-1 at 13.) But the Court disagrees. While one could arguably view the arbitrator's award as infringing on Solo's rights under Article 5, his lack of explanation is just as easily perceived as a permissible interpretation of the contract. See Wiregrass Metal Trades Council, 837 F.3d at 1091-92 ("The rule . . . is that, when it is 'not apparent' from the arbitrator's stated reasoning (or lack thereof) whether she permissibly interpreted a collective bargaining agreement or impermissibly modified it, and one can plausibly read the award either way, the court must resolve the ambiguity by finding that the award is an interpretation of the contract . . . .").

First, the fact that the arbitrator recognized Solo's rights under Article 5 supports the Union's position. His statement about Solo's rights under Article 5 arguably shows that he reviewed Article 5 and Article 27 and analyzed any potential conflict between these provisions. Following his analysis, he may have determined that Solo could not shrug off its responsibility to accommodate a disabled worker under Article 27 (and the ADA) by relying on Article 5. Indeed, the ADA specifically provides that a reasonable accommodation may

include "acquisition or modification of equipment." 42 U.S.C. § 12111(9)(B). Thus, the arbitrator may have concluded that, though Solo had the general power to manage its equipment, Article 5 did not obviate the possibility that Article 27 could require Solo to introduce unique equipment for a single employee. While Solo may disagree with such an interpretation of the agreement, it is not so implausible that it warrants vacating or modifying the award.

Second, Solo's arguments during arbitration support the arbitrator's interpretation of the collective-bargaining agreement. Although Solo argued at arbitration that it had the power under Article 5 to change its equipment, it also argued that accommodating Ms. Wells with a sit-down forklift would amount to an undue hardship and a pose a direct threat under the ADA, see 42 U.S.C. §§ 12111, 12112. In its post-hearing brief, Solo stated that "[t]he ultimate decision on the reasonableness of reintroducing a sit-down lift to the work environment fell to [Solo's] Leave and Disability Management Manager," and it argued that "the risk of reintroducing the sit-down lift to the work environment posed enough risk that doing so would pose an undue hardship." (Doc. 23-2 at 24-25.) From this, the arbitrator could have plausibly determined that Solo conceded that providing a sit-down forklift was a possible reasonable accommodation and, therefore, that Article 5 did not preclude

13

him from ordering Solo to provide Ms. Wells with a sit-down forklift.

Third, the arbitrator's interpretation of the collective-bargaining agreement is also supported by the fact that Solo had previously accommodated another employee with a sit-down forklift. According to the arbitrator's decision, another employee suffered ankle and knee problems after Solo began using stand-up forklifts and Solo permitted her to use a sit-down forklift on a temporary basis. (See Doc. 24-4 at 32.) Like the arguments Solo made in its post-hearing brief, the arbitrator could have relied on this information to infer that Solo acquiesced to the idea that a sit-down forklift was a possible accommodation. See Wiregrass Metal Trades Council, 837 F.3d at 1089 ("[A]n arbitrator's award that appears contrary to the express terms of the agreement may nevertheless be valid if it is premised upon reliable evidence of the parties' intent."); see also International Brotherhood of Electrical Workers, v. United Tel. Co. of Fla., 738 F.2d 1564, 1568 (11th Cir. 1984).

Furthermore, Solo relies heavily on Bruno's, Inc. v. United Food and Commercial Workers International Union, 858 F.2d 1529 (11th Cir. 1988), to support its position. There, a collective-bargaining agreement vested the employer with "[t]he right to establish and maintain reasonable rules and regulations covering the operation of the stores . . . ." Id. at 1530. Under this

authority, the employer implemented a policy under which employees would receive one-day suspensions for certain rule violations. A number of employees punished under this policy challenged their suspensions and the parties proceeded to arbitration. The arbitrator determined that the employees had been disciplined without just cause and that the employer's policy was void, and he outlined a new policy for the employer to follow. The district court vacated the award to the extent that it struck the existing policy and implemented a new one. The Eleventh Circuit affirmed. Specifically, the court found that the collective-bargaining agreement "bar[red] anyone other than Bruno's, including an arbitrator, from setting up store rules and operating procedures." <u>Id.</u> at 1532 (footnote omitted). Accordingly, the court held, the arbitrator's decision to "write and impose[]" a new policy violated the plain terms of the agreement. <u>Id.</u>

<u>Bruno's</u> is distinguishable from this case. The arbitrator there struck down an entire policy and instructed the employer to follow one he created. Here, the arbitrator expressly acknowledged Solo's right to implement new equipment. But he determined that it must still provide reasonable accommodations to disabled employees, including providing individualized equipment when necessary. He did not invalidate Article 5's grant of power in Solo to change its equipment. He did not

15

overrule Solo's decision to use stand-up forklifts. And he did not replace Solo's decision with his own. Rather, he determined that providing Ms. Wells with a sit-down forklift was a reasonable accommodation for her disability.

Because the Court is satisfied that the arbitrator was arguably construing the parties' collective-bargaining agreement, see Misco, 484 U.S. at 38, the Court **DENIES** Solo's motion for summary judgment on this issue. The Court **GRANTS** the Union's motion for summary judgment to the extent it requests that the Court enforce the award on these grounds.

### b. Whether the arbitrator's award was authorized under the ADA

Solo argues that the arbitrator's award should be modified because it was not authorized under the ADA. Specifically, Solo claims that, under the ADA, "disabled employees are not entitled to the specific accommodation of their choice." (Doc. 24-1 at 18.)

Solo is correct that a disabled employee is not necessarily entitled to the accommodation of her choice. See Dickerson v. Sec'y, Dep't of Veterans Affairs Agency, 489 F. App'x 358, 360 (11th Cir. 2012) ("[A]n employer is not required to accommodate an employee in any manner in which that employee desires." (alteration in original)); Copeland v. Ga. Dep't of Juvenile Justice, No. 7:12-CV-24, 2013 WL 1296778, at *11 (M.D. Ga. Mar.

27, 2013) ("Plaintiff is not entitled to her preferred accommodation, only a reasonable one."). But that does not mean that an employee is never entitled to her preferred accommodation. Here, the arbitrator clearly determined that allowing Ms. Wells to use a sit-down forklift was a reasonable accommodation. That the accommodation is the one Ms. Wells preferred does not invalidate it.

Solo also claims that the arbitrator erred by ordering a specific accommodation. Instead, Solo argues, once he found that Solo failed to accommodate Ms. Wells, he should have instructed Solo to engage in an interactive process with Ms. Wells, 29 C.F.R. § 1630.2(o)(3), to determine the appropriate accommodation. The Court disagrees.

First, while the arbitrator may have been permitted to simply instruct the parties to decide on an accommodation themselves, he was not required to do so. As noted, the arbitrator framed the issues as: "Did the Company violate provisions of the parties' collective bargaining agreement and/or any provisions of Federal law . . . ? If so, what is the remedy?" (Doc. 24-4 at 24 (emphasis added).) And he decided that the appropriate remedy was to order Ms. Wells reinstated and provided with a sit-down forklift.

Moreover, to the extent the arbitrator contemplated leaving the determination of the specific accommodation to the parties

17

to decide, his refusal to do so makes sense. Solo argues that numerous other accommodations existed, including allowing Ms. Wells to take breaks and moving her to a different position. But Solo rejected similar requests prior to the arbitration. Accordingly, it would not have been especially efficient for the arbitrator to broadly instruct Solo to comply with the ADA because it may have resulted in Solo once again refusing to accommodate Ms. Wells. That is, Solo was required to comply with the ADA prior to the arbitration. There is little reason to think that an abstract instruction from the arbitrator would have changed what Solo viewed as reasonable accommodations.

Because the arbitrator's award was authorized under the ADA, the Court **DENIES** Solo's motion for summary judgment on this issue. To the extent the Union seeks to enforce the award on these grounds, the Court **GRANTS** its motion for summary judgment.

### 3. Retention of Jurisdiction, Remand, and Attorneys' Fees

The Unions asks the Court to remand this matter to the arbitrator to calculate back pay, to retain jurisdiction, and to award attorneys' fees, costs, and prejudgment interest. The Court addresses each of these issues below.

First, with respect to remanding this matter, Solo consents to this case being remanded to the arbitrator. Accordingly, the Court **GRANTS** this request. This matter shall be **REMANDED** to the arbitrator to calculate back pay.

Second, the Union provides no legal basis justifying the Court retaining jurisdiction. And the Court sees no reason to keep this case pending on its docket. Accordingly, the Union's request is **DENIED**.

Finally, the Court declines to award attorneys' fees or costs. When a party challenges an arbitral award, a court may award attorneys' fees when the challenging party acts "in bad faith, vexatiously, wantonly or for oppressive reasons." <u>United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International v. Wise Alloys, LLC</u>, 807 F.3d 1258, 1275 (11th Cir. 2015) (citation omitted) (internal quotation marks omitted). But attorneys' fees are not proper when "at least some plausible argument supported the challenge . . . ." <u>Id.</u> Here, the Court is satisfied that at least a plausible argument existed for Solo to challenge the award. The Union's request for attorneys' fees, therefore, is **DENIED**. Moreover, to the extent prejudgment interest is appropriate in this case, the Union may address that issue with the arbitrator on remand.

### V. Conclusion

For the reasons stated above, Solo's motion for summary judgment is **DENIED**, and the Union's motion for summary judgment is **GRANTED in part and DENIED in part**. This matter is hereby

19

**REMANDED** to Arbitrator William A. Dealy Jr. The Clerk shall **TERMINATE** all motions and deadlines and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia this 4th day of January, 2017.

*/s/ J. Randal Hall*
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA